UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER COPPIN,<br><br>Defendant. | No. 2:16-cr-00223-KJM<br><br><br>ORDER |

Defendant Christopher Coppin moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot., ECF No. 105. In his motion, defendant argues primarily that his lack of one kidney places him at an increased risk of serious complications if he were to contract COVID-19. *Id.* at 1–2. The government opposes the motion. Opp'n, ECF No. 98. Mr. Coppin also has filed notices of supplemental authorities with updated information, which the court has reviewed. *See* ECF Nos. 117, 118. For the following reasons, the motion is **granted**. Mr. Coppin also filed a request to seal on August 20, 2020, requesting the sealing of Exhibits A, B, D, E, F, and I to the motion. ECF No. 106. This motion is **granted** as provided by Local Rule 141(b).

**I.  Sealing**

Regarding the motion to seal, the court has considered the factors set forth in *Oregonian Publishing Co. v. U.S. District Court for the District of Oregon*, 920 F.2d 1462 (9th

1

1   Cir. 1990) ("(1) closure serves a compelling interest; (2) there is a substantial possibility that, in
2   the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives
3   that would adequately protect the compelling interest.") (citing *Press-Enterprise Co. v. Superior*
4   *Court of California for Riverside Cnty.*, 478 U.S. 1, at 13–14 (1986)).  The subjects of medical
5   records have a strong interest in confidentiality, which, in this case, outweighs the public's
6   interest in access.  *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir.
7   2006); *see also United States v. Maddawalaabuu Dadi*, No. CR18-0283, 2020 WL 5982007,
8   at *1 (W.D. Wash. Oct. 8, 2020).  The court finds that, without sealing, the compelling interests
9   identified by Mr. Coppin would be harmed.  The court further finds there are no additional
10  alternatives to sealing Mr. Coppin's Request and Exhibits A, B, D, E, F and I that would
11  adequately protect the compelling interests identified by the government.

**II.     Background and Administrative Exhaustion**

Mr. Coppin pled guilty to one count of possession of a firearm by a prohibited person, 18 U.S.C. § 922(g)(9), and one count of possession of an unregistered firearm, 26 U.S.C. § 5861(d).  ECF No. 101 at 1.  The court sentenced him to an 18 month term, which began on January 27, 2020; Mr. Coppin currently is housed at FCI Herlong.  *Id.* at 2.  At the time this order is issuing, Mr. Coppin has served approximately 51 percent of his sentence.  *See* Opp'n at 2 (adjusting for time between filing and writing).  His projected release date is May 3, 2021.

Mr. Coppin requests the court alter his sentence based on 18 U.S.C. § 3582(c)(1)(A), to reduce his risk of contracting COVID-19.  Title 18 of the U.S. Code § 3582(c)(1)(A)(i) allows a court to modify a sentence under certain circumstances.  Under the current version of the statute, a motion for modification may be made by either the Director of the Bureau of Prisons or by a defendant "after the defendant has fully exhausted all administrative rights to appeal[.]" 18 U.S.C. § 3582(c)(1)(A).  Mr. Coppin attaches a letter to his motion, dated April 27, 2020, requesting the warden move to reduce his term of imprisonment.  Mot. Ex. C.  This request was denied.  *Id.*  The government does not contest the sufficiency of the letter as satisfying administrative exhaustion requirements.  Accordingly, **administrative exhaustion is**

/////

**satisfied.**  The court moves to consider whether modification is supported by extraordinary and compelling reasons, and the applicable § 3582(c)(1)(A) sentencing factors.

### III.     Extraordinary and Compelling Reasons

Following administrative exhaustion, a district court engages in a two-step process in determining whether to grant a motion for compassionate release.  First, it must consider the familiar 18 U.S.C. § 3553(a) factors applicable at the original sentencing, to the extent they remain applicable at the time a motion is brought.  18 U.S.C. § 3582(c)(1)(A).  Second, the court must find that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).[1]

Here, taking into account Mr. Coppin's supplemental filings, there are extraordinary and compelling reasons supporting his requested sentence modification.  In his original filing, Mr. Coppin argues his having only one kidney increases his risk from hypertension; although at this point he has not been diagnosed with hypertension, if he were it would place him at greater risk of death.[2]  Mot. at 9–10.  Mr. Coppin has presented a letter from the team responsible for the kidney transplant for which he donated his kidney, which says his blood pressure must stay below 140.  Mot. at 9–10 & Exs. B, E.  He presents evidence his blood pressure in fact exceeded 140 when he was admitted to the Bureau of Prisons, and further evidence suggesting he has received little to no treatment for high blood pressure since that time.  Mot. at 10 & Ex. B.

The physicians supervising Mr. Coppin's organ donation also advise: "Due to the Covid 19 pandemic and the severe outcomes people face when dealing with the infection, we have asked that Living Donors do everything possible to avoid getting the infection.  Covid 19 is worse on kidneys and causes kidney failure.  We strongly encourage Living Donors to self isolate

---

[1] This court has previously found U.S.S.G. § 1B1.13(1)(C)(i) is not binding after the passage of the First Step Act, but considers it guidance in deciding COVID-19 compassionate release cases. *See United States v. Bradley*, No. 2:14-cr-00293-KJM, 2020 WL 3802794, at *2–3 (E.D. Cal. July 7, 2020).

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html) (accessed on October 8, 2020).

3

1 and strictly follow the State and Federal mandated Covid 19 precautions." *Id.* Ex. B.  While
2 Mr. Coppin could be expected to live a normal life with only one kidney under normal
3 circumstances, his condition means he is dependent on that one kidney functioning well.  To the
4 extent he may be at risk of developing hypertension, if he has not already, hypertension
5 exacerbates any chronic kidney disease such that, in combination, the conditions appear to
6 increase risk of severe complications from COVID-19.  *Cf. United States v. Johnson*, No. CR
7 4:16-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020) (granting motion
8 for compassionate release for inmate suffering from hypertension and chronic kidney disease,
9 finding chronic kidney disease at "any stage is...a serious...medical condition...that substantially
10 diminishes the ability of the defendant to provide self-care within the environment of a
11 correctional facility and from which he or she is not expected to recover").  While Mr. Coppin
12 also has not been diagnosed with chronic kidney disease at this point, the court is troubled by the
13 lack of medical attention he is receiving, for his elevated blood pressure but also for what appears
14 to be a more serious condition explained below.

15 In his recent filings, Mr. Coppin presents unrebutted evidence of ongoing
16 colorectal bleeding and abdominal discomfort.[3]  Supplemental Filing 1 Ex. A at 2, ECF No. 117-
17 1.  These symptoms concern him given his family history, with his brother having died 4 years
18 ago from colon cancer.  *Id.*  While Bureau of Prisons medical personnel classified Mr. Coppin's
19 condition as "urgent" and originally scheduled a colonoscopy for October 11, 2020, ECF
20 No. 116-1 at 4, Mr. Coppin represents the colonoscopy has not yet taken place, and he has
21 received no other treatment.  Supplemental Filing 1 at 2.
22 /////
23

---

[3] While there currently appears to be no established link between colorectal bleeding and increased risk of complications from COVID-19, the existence of some research of which the court takes notice suggests COVID-19 may cause or aggravate gastrointestinal symptoms. Gastrointestinal symptoms associated with COVID-19: impact on the gut microbiome, (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7438210/) (accessed Dec. 23, 2020); Mayo Clinic Q&A: COVID-19 and gastrointestinal concerns, (https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-covid-19-and-gastrointestinal-concerns/) (accessed Dec. 23, 2020).

4

The court notes Mr. Coppin also claims a history of lung infections, suggesting this experience may have caused permanent damage heightening his risk. Mot. at 12 & Ex. E at 2.

The government does not dispute any of the medical evidence supporting Mr. Coppin's position. It is Mr. Coppin's contention that the constellation of risks he faces "bring[s] him within the ambit of those with increased risk." Mot. at 10. On the record now before it, the court agrees. The government's failure to provide treatment for his elevated blood pressure, or to perform a scheduled medical procedure the Bureau of Prisons itself determined was urgent demonstrates Mr. Coppin is not adequately cared for at FCI Herlong and cannot properly care for himself. *See* U.S.S.G. § 1B1.13 (ability to care for oneself a significant consideration when determining appropriateness of sentence modification); *see also United States v. Fernandez*, No. 2:16-00115, 2020 WL 5909490, at *3, 5 (E.D. Cal. Oct. 6, 2020). This failure to provide self-care, against the backdrop of Mr. Coppin's range of medical issues and in the face of COVID-19, provides extraordinary and compelling reasons for granting his motion.

The status with respect to COVID-19 at FCI Herlong also supports Mr. Coppin's motion. Currently, the facility has administered tests to 854 of the 982 inmates in the facility, and 266 of those have tested positive.[4] As a general matter, public health authorities and courts have recognized that housing in a correctional facility presents a risk of COVID-19 infection, given the number of persons living in close quarters with limitations on their ability to follow all recommended protocols.[5] Mr. Coppin's risk is heightened because his job as an inmate is that of a "town driver," which requires him to engage in the kind of movement between locations that can facilitate transmission of the virus: he drives inmates between the FCI Herlong facility and

/////

/////

---

[4] *See* Bureau of Prisons Covid-19 Update (https://www.bop.gov/coronavirus/); *see also* FCI Herlong Facility Page (https://www.bop.gov/locations/institutions/her/).

[5] CDC, Guidance for Correctional & Detention Facilities (July 22, 2020) (https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html) (accessed Dec. 23, 2020).

1    the attached camp, and shuttles released inmates to Reno.⁶  Supplemental Filing 2 at 2, ECF
2    No. 118.
3            Moreover, Mr. Coppin is not a danger to the community.  His prohibited person
4    status supporting the conviction on possession of a firearm by a prohibited person in violation of
5    18 U.S.C. § 922(g)(9) was based on a 1998 misdemeanor domestic violence conviction,
6    Presentence Investigation Report (PSR) ¶¶ 36-37, ECF No. 89 (sealed); since 1998 he has
7    incurred no other similar criminal history, with one DUI more than ten years ago, in 2009, *id.*
8    ¶ 38.  While the circumstances of the conviction offenses here are troubling, given Mr. Coppin's
9    knowledge of his prohibited status as well as the nature of the firearms he possessed and worked
10   on, nothing in the factual basis supporting his conviction betrays any violent conduct; he was
11   fully cooperative with law enforcement during execution of the underlying search warrant and
12   fully compliant with all terms of pretrial release for a period of more than three years prior to
13   sentencing.  *See* PSR ¶ 3.
14           Mr. Coppin proposes that, if released, he live with his sister in Yuba City,
15   California.  Mot. at 23.  The court's Probation Office has approved this proposed residence and
16   does not recommend location monitoring.
17   **IV.    Conclusion**
18           **Mr. Coppin's motion is therefore granted as follows:**
19   1. The court modifies Mr. Coppin's imposed sentence of 18-months incarceration to time
20      served.  All previously imposed conditions of supervised release remain in effect for the
21      full 36-month supervised release term.  *See* Judgment & Commitment, ECF No. 565.
22   2. There being a verified residence and an appropriate release plan in place, this order is
23      stayed for up to seven days to make appropriate travel arrangements and to ensure
24      defendant's safe release.  Mr. Coppin shall be released as soon as appropriate travel
25      arrangements are made.  If more than seven days are needed to make appropriate travel

---

⁶ Employer Information for Bus Transit Operators (https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/bus-transit-operator.html) (accessed Dec. 23, 2020) (detailing risks presented to bus drivers by the close proximity in an enclosed space).

1    arrangements and ensure defendant's safe release, then the parties shall immediately
2    notify the court and show cause why the stay should be extended.
3    3. The court **orders Mr. Coppin to self-isolate for fourteen days** in Ms. Reimann's home
4    once he arrives there, as a means of protecting his health and that of the others residing in
5    the home and community while also complying with all applicable public health orders.
6    This order resolves ECF Nos. 105 and 106.
7    IT IS SO ORDERED
8    DATED: December 23, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

7